Weygandt, C. J.
 

 The determination of this controversy becomes less difficult and the result is not surprising when it is observed, first, that the only witness called was the plaintiff himself and, second, that the defendant offered no evidence except an affidavit .signed by Muni who was the owner of the truck and a brother-in-law of the plaintiff.
 

 By stipulation and by express admission the number of defenses has been reduced to one. The single question presented to and determined by the lower courts
 
 *189
 
 was whether the record contains evidence tending to show that the plaintiff was an employee of Aztec Lines, Inc., at the time he suffered his injuries. Hence, this is the only question now requiring consideration upon a review by this court.
 

 The part of the stipulation relating to the single issue reads as follows:
 

 “It is stipulated by and between counsel for claimant and counsel for the Industrial Commission that the Aztec Lines, Inc., was at all times herein mentioned amenable to the Workmen’s Compensation Act and had complied with the provisions thereof and that the issue as presented in this case is whether or not the claimant, John Bobik, was an employee of the said Aztec Lines, Inc., on February 9, 1941.
 

 “Miss Buzney: Is it agreed, Mr. Shapiro, that the only issue involved in this case is whether or not the claimant was an employee of the Aztec Lines, Inc., on February 9, 1941?
 

 “Mr. Shapiro: That is correct. That is the only issue. ’ ’
 

 The agreement between the plaintiff and Muni was parol; that between Muni and Aztec Lines, Inc., was partly parol and partly in writing and apparently was negotiated mainly in Cleveland where the plaintiff and Muni lived and where Aztec Lines, Inc., had an office. The plaintiff testified as follows:
 

 “* * * The first trip I went to Chicago after I talked with the boss in Cleveland.
 

 “Q. You talked to the boss in Cleveland, Mr. Full, is that right? A. Yes.
 

 “Q. And then you took a trip to Chicago. Whose truckload of freight were you hauling when you took this trip to Chicago? A. Aztec.”
 

 The part of the agreement that was in writing is not in the evidence. However, by stipulation a form des
 
 *190
 
 ignated as merely an “equipment” agreement was introduced for the purpose of showing the body of the contract. The blank spaces for the date, place, equipment, signatures and the designation of the party of the second part remain unfilled.
 

 Muni agreed to furnish the truck, driver, gasoline, oil, tires, accessories and repairs at his own expense. He paid the plaintiff: $18 per trip plus a bonus for overweight. Aztec Lines, Inc., paid Muni for furnishing equipment, facilities and operator thereof $40 per trip, plus twenty cents for each one hundred pounds over 20,000 pounds.
 

 But where was the right of control as to the manner and means of performing the work? Was it in Aztec Lines, Inc., or was it in Muni as an independent contractor?
 

 In its opinion the Court of Appeals stated that “there is no evidence in the record that Muni exercised any control over Bobik in the performance of his work.” The plaintiff testified that the name on the truck was “Aztec Lines, Incorporated”; that this company furnished the “permits and the cards and everything I needed”; that he worked for this company exclusively for eight months; that although most of his time was occupied in long distance hauling, he per-, formed such other duties for the company as making local deliveries and loading and unloading the truck; that his “boss” was the company; that he received and followed his instructions from the company; and that in addition to instructing him as to the work to be performed, the company designated the route for him to follow on his trip.
 

 Consistent with the foregoing parol evidence is the following provision appearing in the written part of the “equipment” agreement between Muni and Aztec Lines, Inc.:
 

 “2. It is agreed that nothing herein contained shall
 
 *191
 
 be construed or considered as the granting or assigning by the party of the first part to the party of tbe second part [Muni], or the investing by the party of the first part in the party of the second part, of any right, authority, privilege, license, certificate, or permit as a motor carrier.”
 

 And in another paragraph appear the recitals that the party of the first part desires to add “equipment and facilities” for use in its service and that the party of the second part is desirous of furnishing such “equipment and facilities.”
 

 In view of these circumstances it cannot be said that the record contains no evidence tending to show that the plaintiff was an employee of Aztec Lines, Inc., at the time he was injured. On the contrary, it is disclosed clearly that the right of control as to the manner and means of performing the work required of the plaintiff was in the company and not in Muni as an independent contractor. Muni’s responsibility was to furnish the equipment and the driver.
 

 In numerous instances this court has restated the general rule as summarized in the following language in the second paragraph of the syllabus in the case of
 
 Gillum
 
 v.
 
 Industrial Commission,
 
 141 Ohio St., 373, 48 N. E. (2d), 234:
 

 “Whether one is an independent contractor or in service depends upon the facts of each case. The principal-test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.”
 

 To the same effect is the following summary appearing in 42 Corpus Juris Secundum, 638:
 

 
 *192
 
 ‘ ‘ The question whether one is an employee or an independent contractor has been considered in many cases, and various tests have been applied in determining it, although it has been said that it is impossible to lay down a rule by which the status of men working and contracting together can be clearly defined in all cases as employees or independent contractors, for each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together; and ordinarily it is said to be a question of fact. The chief or master test, or the principal consideration in determining the question, is the right to control the manner of doing the work, so that, generally speaking, it may be stated that if the employee is under the control of the employer he is a servant or employee and not an independent contractor, but if, in the performance of the work, he is not under the control of the -employer he is an independent contractor; it is not, however, the actual exercise of the right by interfering with the work but rather the right to control which constitutes the test. ’ ’
 

 Likewise, it is a well-settled rule of law that if a master expressly or impliedly assents to an arrangement whereby a person is procured by an employee to act as his substitute or assistant, such substitute or assistant occupies the position of an employee of the master, and the master owes to the new employee the same duties as to his other employees. 26 Ohio Jurisprudence, 156, Section 10; 18 Ruling Case Law, 577, Section 83; 26 Ohio Jurisprudence, 284, Section 164; 35 American Jurisprudence, 591, Section 163.
 

 Hence, it is the view of this court that the lower courts were not in error in holding that the record in this case contains evidence tending to show that the plaintiff, Bobik, was an employee of Aztec Lines, Inc., at the time he suffered his injuries, and that he is entitled to compensation.
 

 
 *193
 
 The judgment of the Court of Appeals affirming that of the Court of Common Pleas must be affirmed.
 

 Judgment affirmed.
 

 Zimmerman, Bell, Williams, Turner, Matthias and Hart, JJ., concur.