**SILVER, Appellant,**

v.

**STATZ et al., Appellees.**

[Cite as *Silver v. Statz,* 166 Ohio App.3d 148, 2006-Ohio-1727.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86384.

Decided April 6, 2006.

Mark A. DiCello and Robert F. DiCello, for appellant.

David J. Fagnilli, for appellee Publisher's Circulation Fulfillment, Inc.

Timothy Whitford and John W. Bosco, for appellee LynnMarie Statz.

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Plaintiff-appellant, Christine Silver, appeals from a judgment of the Cuyahoga County Common Pleas Court that granted the motion for summary judgment of defendant-appellee, Publisher's Circulation Fulfillment, Inc. ("PCF"). Silver argues that the trial court erred in granting PCF's motion for summary judgment because Silver had submitted sufficient evidence to demonstrate that a

genuine issue of material fact exists as to whether defendant-appellee Statz was an employee of PCF. For the following reasons, we reverse the judgment and remand the cause to the trial court.

{¶ 2} The record reveals that PCF is a national corporation/subcontractor that provides newspaper delivery services for the New York Times ("Times"). After a subscriber enters into a contract for newspaper delivery, PCF will contact a carrier to deliver the paper. All carriers are employed by PCF as independent contractors and are required to sign an "Independent Contractor's Deliverer Agreement." Under the terms of this agreement, PCF supplies the Times to the carriers at no cost. The carriers are required to deliver to each subscriber a dry and undamaged copy of the Times, with no materials other than those attached by PCF, by 6:00 a.m. Monday through Saturday and by 7:30 a.m. on Sunday. Carriers have the right to control the business as they choose and can engage others to deliver papers on the route. Carriers are free to pursue other business activities, including delivery of other publications. PCF does not provide the carriers with vehicles and does not pay for gas, maintenance, or insurance relating to their personal vehicles. PCF pays the carriers a weekly wage. PCF does not provide medical or health-care benefits to the carriers, does not pay the carriers' Social Security taxes, and does not withhold taxes from their pay. Rather, PCF provides each carrier with a 1099 tax form.

{¶ 3} PCF also employs recovery drivers. Recovery drivers are considered part-time employees and receive a copy of an employee handbook. The job of a recovery driver is to deliver papers that were not previously delivered by the carriers. PCF pays the recovery driver an hourly wage, withholds taxes, and provides a weekly car allowance of $30.

{¶ 4} LynnMarie Statz began working for PCF in 1996. She was employed as both a carrier and a recovery driver. As a carrier, Statz drove to a distribution point each morning to load the papers into her car. She delivered the papers before 6:00 a.m. to addresses on a delivery list provided by PCF. She could deliver the papers only to listed addresses. When customers were added to or removed from this list by PCF, Statz was required to incorporate those changes into her route. Payments were made directly to PCF, and any complaints or requests for delivery changes went through PCF. PCF conducted route audits to manage carrier routes and spot checks on carriers to determine whether they were in compliance with PCF instructions. If Statz missed a customer, a PCF recovery driver would deliver the paper. As a carrier, she received a weekly wage of $140 and 1099 tax forms. As a recovery driver, she received an hourly wage with taxes withheld. Her route as a recovery driver was not the same as her carrier route. Her hours as a recovery driver were 10:30 a.m. to 1:30 p.m.

{¶ 5} On March 2, 2000, at approximately 6:05 a.m., Statz was leaving the parking lot of her final delivery of the Times when she hit Silver with her car. As a result of the accident, Silver sustained serious injury to her legs.

{¶ 6} On October 10, 2001, Silver filed a complaint alleging that Statz had negligently operated her motor vehicle. She also named PCF as a defendant, alleging that PCF was liable on the basis of respondeat superior, since Statz was delivering newspapers on behalf of PCF when the accident occurred and was acting as an employee of PCF.

{¶ 7} On September 29, 2003, PCF and Silver filed cross-motions for summary judgment regarding Statz's employment status at the time of the accident. PCF argued that it was not liable for Statz's negligence under the doctrine of respondeat superior because Statz was an independent contractor, and not an employee, at the time of the accident. Silver argued that there was an issue of fact with regard to Statz's employment status. The trial court granted PCF's motion for summary judgment upon finding no genuine issue of fact on the issue of employment status. Specifically, the trial court found that "pursuant to the terms of the 'Independent Contractor's Deliverer Agreement,' defendant Statz was an independent contractor of PCF." Silver now appeals from that judgment and raises one assignment of error for our review.

{¶ 8} "I. The trial court erred in granting summary judgment to PCF and in finding Statz to be an independent contractor, where testimony showed she was both an employee and an independent contractor of PCF at the time of the accident; and where PCF retained the right to control the manner of Statz's employment through: 1) an administrative complaint process, 2) written statements of corporate policy and conduct, and 3) unwritten corporate business policies and practices not stated in the independent contractor agreement."

{¶ 9} In this assignment of error, Silver claims that the trial court erred in granting summary judgment in favor of PCF, because there is a question as to whether Statz was an employee of PCF at the time of the accident.

{¶ 10} We begin by noting that an appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether, as a matter of law, no genuine issues exist for trial. *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 11} Summary judgment is appropriate when it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to

**152**

judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 12} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., that affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing that there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶ 13} With these principles in mind, we now consider whether the trial court's grant of summary judgment in PCF's favor was appropriate.

{¶ 14} As an initial matter, we reject the trial court's determination that the language of the Independent Contractor's Deliverer Agreement is determinative.[1] Contract language does not determine the relationship of the parties; rather, the objective nature of the relationship is determined by an analysis of the totality of the facts and circumstances of each case. *Bobik v. Indus. Comm.* (1946), 146 Ohio St. 187, 191, 32 O.O. 167, 64 N.E.2d 829.

{¶ 15} In an action to determine whether a person is an employee or an independent contractor, the court must determine who had the right to control the manner or means of doing the work. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881. The factors to consider include (1) who controls the details and quality of work, (2) who controls the hours worked, (3) who selects the materials, tools, and personnel used, (4) who selects the routes traveled, (5) the length of employment, (6) the type of business, (7) the method of payment, and (8) any pertinent agreements or contracts. Id.

{¶ 16} Whether someone is an employee or an independent contractor is ordinarily an issue of fact. Id. However, when the evidence is not in conflict, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court. Id. All indicia of an employment

---

1. The agreement is drafted with the intent of designating "deliverers," such as Statz, independent contractors. Specifically, "Whereas, the Deliverer is engaged in the business of providing services as an independent contractor to deliver newspapers and magazines to home delivery subscribers."

relationship in a given case must be assessed together as a whole. *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207, 211, 616 N.E.2d 591.

{¶ 17} Here, the facts establish that a genuine issue of material fact exists as to whether Statz was working as an independent contractor or an employee at the time she injured Silver. Although PCF claims that it did not have the right to control Statz's work, there is evidence to suggest that it did. PCF designated the time for delivery, the area covered, the manner in which the papers were delivered (i.e., bagged and banded, with no outside materials), and the persons to whom delivery was made. PCF prevented direct communication between the carrier and the customer and prevented carriers from generating business along their route. Although PCF did little actual supervision, it retained the right to monitor and discipline carriers for improper delivery of newspapers. PCF supplied the papers to Statz at no cost and handled all billing issues. All of these circumstances tend to establish that Statz was an employee of PCF. See *Vajda v. St. Paul Mercury Ins. Co.* (Jan. 16, 2003), Cuyahoga App. No. 80917, 2003 WL 125086; *Celina Mut. Ins. Co. v. Hinkle* (1991), 75 Ohio App.3d 192, 598 N.E.2d 1307; *Martinez v. Trimble* (Dec. 29, 1995), Lucas App. No. L–95–160, 1995 WL 764045.

{¶ 18} Tending to establish the opposite, however, are the facts that Statz used her own car, was free to select the route and the order in which she delivered, was subject to little supervision, and could have someone else deliver for her. Also, PCF did not deduct taxes from Statz's pay as a carrier and issued a 1099 form each year to Statz for services performed. The use of 1099 forms typically suggests that the parties were not acting in an employer/employee relationship but rather in an independent-contractor relationship. See *Northeast Ohio College of Massotherapy v. Burek* (2001), 144 Ohio App.3d 196, 759 N.E.2d 869; *Pavlick v. Conrad* (Sept. 27, 2001), Cuyahoga App. No. 78705, 2001 WL 1141454

{¶ 19} Since the facts concerning this issue are in dispute, the trial court erred in granting PCF's motion for summary judgment and denying Silver's cross-motion for summary judgment.

Judgment reversed
and cause remanded.

GALLAGHER and MCMONAGLE, JJ., concur.